# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

HOME LEGEND, LLC,

    Plaintiff and Counterclaimant,

v.

MANNINGTON MILLS, INC.,

    Defendant and Counterclaimant.

v.

POWER DEKOR GROUP CO. LTD.,

    Consolidated Defendant.

CIVIL ACTION FILE NO.:
4:12-CV-0237-HLM

## ORDER

This case is before the Court on Plaintiff and Counterclaimant Home Legend, LLC's ("Home Legend") Motion for Summary Judgment that the Asserted Copyright

Does Not Comprise Copyrightable Subject Matter ("Motion for Summary Judgment") [110].[1]

## I.  Background

### A.  Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts.  Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1241 (11th Cir. 2007).  This statement does not represent actual findings of fact.  In re Celotex Corp., 487 F.3d 1320, 1328 (11th Cir.

---

[1]Home Legend's Motion for Summary Judgment sought judgment in Home Legend's favor on the copyright infringement claim asserted in Mannington's Counterclaim against Home Legend.  (See generally Mot. Summ. J. (Docket Entry No. 110).)

AO 72A

(Rev.8/8

2007).   Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.[2]

---

[2]The Court has excluded proposed facts that are irrelevant or that are not properly supported by citations to the record. (See Home Legend's Statement of Material Facts ("PSMF") (Docket Entry No. 110-2) ¶¶ 5, 25-26, 31; Mannington's Statement of Disputed Material Facts ("DSMF") (Docket Entry No. 118-8) ¶ 2.) To the extent that one party disputes the other party's proposed fact, the Court has examined the record to determine the actual facts.

Home Legend also submitted a Supplemental Statement of Material Facts with its reply brief. (Docket Entry No. 130-8.)  The Local Rules do not provide for such a document, and the Court consequently does not consider the Supplemental Statement of Material Facts.  See generally N.D. Ga. R. 56.1B.  Likewise, the Court does not consider Mannington's corresponding response to the Supplemental Statement of Material Facts. (Docket Entry No. 134-2.)  Even if the Court had considered the factual statements contained in those filings, the Court's ruling on the Motion for Summary Judgment would not change.

3

## 1.   Laminate Flooring

Mannington and Home Legend both sell laminated flooring products.  (PSMF ¶ 1; Mannington's Resp. PSMF ("DRPSMF") (Docket Entry No. 118-7) ¶ 1.)   Laminate flooring is made by laminating paper bearing a digital photograph of actual wood onto a substrate.  (Id.; id.)  The laminated paper and substrate then is coated with hard, wear-resistant coatings to protect the photographic paper from wear during the life of the floor.  (Id.; id.)  Dan Natkin, Mannington's Director for Wood and Laminate Products, testified as follows concerning the laminate flooring manufacturing process:

> There's four key components to the manufacturing process of laminate flooring.  Those four key components are [a] balancing layer on the back of the product; an HDF core board, high-density or

4

medium-density core board that's comprised of wood fiber, think of it as sawdust and resin that's pressed together under heat and pressure to create a very solid center layer.

A decorative layer. That decorative layer is a piece of artwork that's been created to create the final look of the product. And then what we call an overlay that provides the wear-resistance properties of the product.

Those four components are pressed together under heat and pressure to create a panel. That panel is then cut into individual planks. A[n] interlocking system is then cut into those planks and a bevel is applied so that you have your final finished flooring product.

5

(Dep. of Daniel Alan Natkin (Docket Entry No. 50-11)[3] at 40-41; see also Prelim. Inj. Hr'g Tr. (Docket Entry No. 75) at 15-17 (describing process for manufacturing laminate).)

## 2.   The Copyright

Mannington claims that it owns Copyright Registration No. VA-1-747-071, titled "Glazed Maple" (the "Copyright"). (PSMF ¶ 3; DRPSMF ¶ 3; DSMF ¶ 1; Home Legend's Resp. DSMF ("PRDSMF") (Docket Entry No. 130-7) ¶ 1.) The Copyright is for "2-D Artwork." (Copyright, Docket Entry No. 50-12 at 2; Prelim. Inj. Hr'g Tr. at 68.) Mannington sells laminate flooring with the Glazed Maple Design under the

---

[3]Some materials presented by the Parties in connection with the Motion for Summary Judgment also appear in the record in connection with Mannington's previous Motion for Preliminary Injunction.   In most cases, the Court cites to the earliest appearance of those materials on the docket.

AO 72A
(Rev.8/8

name "Time Crafted Maple."   (Aff. of Daniel Alan Natkin

Dated Nov. 30, 2012 ("Natkin Aff. I") (Docket Entry No. 9-3)

¶ 6; Prelim. Inj. Hr'g Tr. at 21.)

### 3.   Mannington's Laminated Flooring

Mannington manufactures laminated flooring to which

it applies actual, natural hardwood designs during the

manufacturing process. (PSMF ¶ 4; DRPSMF ¶ 4.) Among

Mannington's designs are several artistic works inspired by

and intended to emulate the looks of natural wood floors.

(Id.; id.; Natkin Aff. I ¶ 3; Prelim. Inj. Hr'g Tr. at 108.)

According to Mr. Natkin, with Mannington's laminates, it

tries "to recreate the looks that you can find in different

woods" (Prelim. Inj. Hr'g Tr. at 110), and Mannington tries

AO 72A
(Rev.8/8
2)

"to convince the consumer that [laminate is] the next best thing to wood" (id.).

Mannington owns numerous United States Patents directed to various processes, including scraping, staining, color separating, and digitally manipulating the scanned images. (PSMF ¶ 17; DRPSMF ¶ 17; Prelim. Inj. Hr'g Tr. at 27.) According to Mr. Natkin, Mannington does not maintain copyright protection for those processes. (Prelim. Inj. Hr'g Tr. at 27.)

**4.    Development of the Glazed Maple Design**

Mannington's creative design team, including Joe Amato, Mannington's Vice President of Residential Styling, and Mr. Natkin, developed the Glazed Maple design. (DSMF ¶ 2; PRDSMF ¶ 2.)  The development process for

8

the Glazed Maple design began by researching home trends and styles.  (Id. ¶ 3; id. ¶ 3.)

Mannington began the creation process for the Glazed Maple design by using raw maple wood.  (Dep. of Joe Amato (Docket Entry No. 50-8) at 18-19; Prelim. Hr'g Tr. at 39, 44.)  Mannington created the Glazed Maple design, in part, by accentuating the natural chatter[4] on the raw maple boards by hand to bring it out and make it deeper.  (PSMF ¶ 19; DRPSMF ¶ 19; Aff. of Joe Amato (Docket Entry No. 50-1) ¶ 4; Aff. of Al Boulogne (Docket Entry No. 51) ¶ 6; Amato Dep. at 18-19; Natkin Aff. I ¶ 6; Prelim. Inj. Hr'g Tr.

---

[4]Chatter is a broad term.  (Natkin Dep. at 79.)  Chatter may occur naturally in a product via a sander or lathe, or may be created "though a hand scraping process where you physically use a knife and you alter the angle of that knife to create gouges into the product."  (Id.)

at 48, 54; Second Aff. of Dan Natkin ("Natkin Aff. II") (Docket Entry No. 50-6) ¶ 3.) Mannington's representatives applied stain to the boards to make the grain stand out. (PSMF ¶ 20; DRPSMF ¶ 20; Amato Aff. ¶ 5; Boulogne Aff. ¶ 6; Amato Dep. at 18-19; Natkin Aff. I ¶ 6; Natkin Aff. II ¶ 3; Prelim Inj. Hr'g Tr. at 48, 54.) Mannington's representatives then digitally scanned the boards and selected the planks to include in the Glazed Maple design. (PSMF ¶ 21; DRPSMF ¶ 21; Amato Aff. ¶ 5; Amato Dep. at 18-19, 30; Natkin Aff. I ¶ 6; Prelim. Inj. Hr'g Tr. at 51.) According to Mannington's representative, after scanning the boards, the character and all the distressing, marks, and staining, stayed the same. (PSMF ¶ 22; DRPSMF ¶ 22.) Mannington's representatives created color separations on

10

the design and added some retouching for balance. (Id.;

id.; Amato Aff. ¶ 5; Boulogne Aff. ¶ 7; Amato Dep. at 20;

Natkin Aff. I ¶ 6; Prelim. Inj. Hr'g Tr. at 49.)

The final Glazed Maple design had "a number of

different type[s] of chatter marks on it." (Natkin Dep. at 80.)

According to Mr. Natkin, Mannington added most of the

chatter visible on the Glazed Maple design manually, and

the only visible natural chatter on the planks came from

lathe marks, which typically are not desirable. (Prelim. Inj.

Hr'g Tr. at 121; Natkin Aff. II ¶ 5.)

According to Mannington's representative, Joe Amato,

the final Glazed Maple design had some wood grain

present, "but for the most part, all of that [grain] was applied

by hand in some way or another." (Amato Dep. at 37-38.)

11

During the design process, Mr. Amato and his assistants attempted to distress the wood to "create character of what a piece of wood would look like possibly if it was in a building over time." (Id. at 38.) According to Mr. Amato, the techniques they used were intended "to create a product that looked like it was hand crafted and time worn." (Id. at 43.)

According to Mr. Natkin, Mannington "create[s] artwork around a design layer," (Natkin Dep. at 117), and the Glazed Maple design is "literally a piece of artwork" (id.).

### 5.   Functions of Laminate Flooring

Joe Garofalo, Home Legend's representative, opined that laminate flooring serves several distinct functions. (Decl. of Joe Garofalo (Docket Entry No. 53-8) ¶ 3.)

12

According to Mr. Garofalo, "the flooring material under the paper image of real wood[] serves the function of providing a smooth, wear resistant surface to cover a subfloor" (id.) and "[t]his function is unrelated to the particular image applied to the substrate" (id.).  Mr. Garofalo opined: "The image of real wood printed on paper and applied to the laminate flooring substrate performs at least three distinct functions unrelated to the substrate's function of providing a surface to cover a subfloor." (Id. ¶ 4.)  According to Mr. Garofalo, "to the extent that the image on the laminate flooring substrate contains shading, distress or chatter marks and indications of wear, the real wood image serves the function of hiding actual wear to the floor that occurs over time during the life of the laminate flooring product."

13

(Id. ¶ 5.)  Mr. Garofalo also stated that "laminate flooring that emulates and replicates the appearance of old, rustic and worn flooring serves the function of providing an old, rustic, worn-looking floor that is actually a new product, and that further serves the function of not requiring the consumer to wait many years for a 'new' looking floor to naturally acquire over time the appearance of an old, rustic and worn floor."  (Id. ¶ 6.)  According to Mr. Garofalo, because laminate flooring is generally much less expensive than flooring made from real wood, "customers who have a real wood floor can purchase a matching, less expensive laminate flooring product to use in a room next to a room with the more expensive wood flooring" (id. ¶ 7), which "serves the function of permitting customers to have a floor

14

that appears to be, but is not, the same product as a more expensive product elsewhere in the house (id.).   Mr. Garofalo contended that these functions are "distinct from the function served by the substrate, which will provide a covering on a subfloor without regard to the appearance of the image on the top surface." (Id. ¶¶ 5-7.)

According to Mr. Natkin, the bottom layer of the laminate, or the balancing layer, is intended to keep the laminate flat. (Prelim. Inj. Hr'g Tr. at 17.)   The next layer, the core board, which consists of compressed sawdust and resin pressed into a board, provides the structure for the laminate.   (Id.)   The décor paper layer "provides the decorative layer for the floor" (id. at 18), and "provides what you want the finished product visual to look like" (id.).   Décor

AO 72A

(Rev.8/8

paper changes depending on how Mannington designs the laminate product. (Id.) According to Mr. Natkin, the décor paper itself really has no function within the final laminate product or in the manufacturing process. (Id.) Mr. Natkin stated, "essentially you could . . . put a wear layer on top of the core board, it wouldn't really be visually desirable, but in all intents and purposes you could." (Id.) The wear, or overlay, layer provides wear resistance. (Id. at 19, 126.) According to Mr. Natkin, the layer under the wear layer does not have an effect on how much wear the wear layer shows. (Id. at 126.)

Mr. Natkin further testified that the primary purpose of the décor paper layer "is to be pleasing to the eye to the end consumer." (Prelim. Inj. Hr'g Tr. at 20.) According to

16

Mr. Natkin, the décor paper, "for all intents and purposes, [is] like putting a painting on the floor." (Id.)  Mr. Natkin further explained that the décor paper is "a piece of artwork that ultimately becomes the flooring itself, the look, the visual that you're seeking," and that the décor paper has no other purpose.   (Id.)   Specifically, décor paper is not intended to hide wear and tear.  (Id. at 20-21.)  Mr. Natkin also noted that Mannington does not distress its laminate so that it will not show wear and tear, noting that a distressed laminate will perform similarly to a non-distressed laminate. (Natkin Dep. at 31-32.) Mr. Natkin further noted that natural wood flooring has an infinite amount of variety, including distress marks, while a laminate floor does not. (Id. at 30-31.)

17

## B.   Procedural Background

The Court incorporates the procedural background portions of its earlier Orders into this Order as if set forth fully herein, and adds only those background facts that are relevant to the Motion for Summary Judgment.  On May 8, 2014, Home Legend filed its Motion for Summary Judgment.  (Docket Entry No. 110.)  The briefing process for that Motion is complete, and the Court finds that the matter is ripe for resolution.[5]

---

[5]On June 20, 2014, the Court entered an Order denying Mannington's Motion to Strike Home Legend's Reply, but granting Mannington's Motion for Leave to File Surreply.  (Order of June 20, 2014 (Docket Entry No. 133).)  On June 25, 2014, Mannington filed its surreply.  (Docket Entry No. 134).)

18

AO 72A

(Rev.8/8
2)

## II.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) authorizes summary judgment when "there is no genuine dispute as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate and may satisfy this burden by pointing to materials in the record.  Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1313 (11th Cir. 2007).  Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by

19

coming forward with specific facts that demonstrate the existence of a genuine issue for trial. <u>Allen</u>, 495 F.3d at 1314.

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. <u>Optimum Techs., Inc.</u>, 496 F.3d at 1241. The Court also must "'resolve all reasonable doubts about the facts in favor of the non-movant.'" <u>Rioux v. City of Atlanta, Ga.</u>, 520 F.3d 1269, 1274 (11th Cir. 2008) (quoting <u>United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.</u>, 894 F.2d 1555, 1558 (11th Cir. 1990)). Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the

20

evidence presented.  <u>Reese</u>, 527 F.3d at 1271; <u>Skop v. City of Atlanta, Ga.</u>, 485 F.3d 1130, 1140 (11th Cir. 2007). Finally, the Court does not make factual determinations.  <u>In re Celotex Corp.</u>, 487 F.3d at 1328.

## III.  Discussion

A party asserting a copyright infringement claim must show two elements: "(1) that it owns a valid copyright in the work; and (2) copying by [the opposing party]." <u>Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc.</u>, 549 F. App'x 913, 918 (11th Cir. 2013) (per curiam) (internal quotation marks and citation omitted).  "[T]he certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17

21

AO 72A

(Rev.8/8
2)

U.S.C. § 410(c).  "Once a plaintiff produces a certificate of registration, the burden shifts to the defendant to establish that the work in which the copyright is claimed is unprotectable." <u>Progressive Lighting, Inc.</u>, 549 F. App'x at 918 (internal quotation marks omitted).  A party defending a copyright claim can "overcome [the presumption of validity] by presenting evidence and legal argument sufficient to establish that the works in question were not entitled to copyright protection." <u>Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.</u>, 528 F.3d 1258, 1262 (10th Cir. 2008); <u>see also</u> <u>Progressive Lighting, Inc.</u>, 549 F. App'x at 919 ("[T]o rebut the presumption of validity, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of

22

AO 72A

(Rev.8/8
2)

infringement." (internal quotation marks and citation omitted).

Here, Home Legend argues that Mannington's copyright is invalid for a number of reasons, including: (1) Mannington simply sought to copyright an idea or process; (2) Mannington's Design is not sufficiently original to warrant copyright protection; and (3) Mannington cannot obtain copyright protection for a useful article. (See generally Br.

23

Supp. Mot. Summ. J. (Docket Entry No. 110-1).)[6]   The

---

[6]In its reply brief, Home Legend added new arguments: (1) that the Copyright Office initially refused to register Mannington's first application for a copyright concerning the artwork at issue; and (2) that Mannington attempted to do an end-run around that refusal by filing the application for the Glazed Maple Design.  (See generally Reply Supp. Mot. Summ. J. (Docket Entry No. 130).) The Court generally does not permit parties to present new evidence or arguments in connection with reply briefs.  See Obester v. Lucas Assocs., Inc., Civil Action File No. 1:08-CV-03491-MHS-AJB, 2010 WL 8292401, at *42 (N.D. Ga. Aug. 2, 2010) ("Courts generally do not consider issues raised for the first time in a reply brief." (collecting cases)), report and recommendation adopted, 2010 WL 8304884 (N.D. Ga. Sept. 7, 2010); see also In re Egidi, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").  The Court therefore does not consider those new arguments.

Alternatively, even if the Court considered the arguments, the arguments would not change the Court's ruling on the Motion for Summary Judgment.  Indeed, as Home Legend acknowledges, because it "does not seek summary judgment on any deceptiveness issue . . . , any claimed dispute regarding whether there was or was not intentional deception by Mannington is irrelevant." (Reply Supp. Mot. Summ. J. at 9 (internal quotation marks omitted).)  In any event, the Court observes that the Parties' evidence conflicts on the deception issue, which would preclude the Court from granting or denying summary judgment on that issue.  (See Aff. of Scott Salerni (Docket Entry No. 134-1) (disputing Home Legend's assertions as to why Mannington filed

Court addresses those arguments in turn.

## A.   Idea or Process

17 U.S.C. § 102(a) provides that copyright protection may issue for "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). 17 U.S.C. § 102(b), however, cautions that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

---

second copyright application).)

AO 72A

(Rev.8/8

Consequently, "[c]opyright cannot protect an idea, only the expression of that idea." <u>Suntrust Bank v. Houghton Mifflin Co.</u>, 268 F.3d 1257, 1263 (11th Cir. 2001); <u>see also</u> <u>Peter Letterese & Assocs., Inc.  v. World Inst. of Scientology Enters., Int'l</u>, 533 F.3d 1287, 1302 (11th Cir. 2008) ("Copyright protects original <u>expression</u> only; it does not extend to any underlying ideas, procedures, processes, and systems." (emphasis in original)); <u>Laureyssens v. Idea Group, Inc.</u>, 964 F.2d 131, 141 (2d Cir. 1992) ("'[T]he protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself.'" (alteration in original) (quoting <u>Durham Indus., Inc. v. Tomy Corp.</u>, 630 F.2d 905, 912 (2d Cir. 1980))). "The result is that 'copyright assures authors the right to their

26

original expression, but encourages others to build freely upon the ideas and information conveyed by the work.'" Suntrust Bank, 268 F.3d at 1264 (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 349-50 (1991)).

Here, Home Legend argues that Mannington essentially sought to copyright an idea or process. For the following reasons, the Court agrees. Although the Copyright at issue is for 2-D artwork, Mannington's response brief and the majority of its evidence focus on the idea of reproducing the look of rustic hardwood and natural wood grain, and on the process that Mannington used to obtain that result in creating the Glazed Maple Design. Consequently, the Court finds that the Copyright is more accurately directed toward a process or idea, which is not a

AO 72A
(Rev.8/8
2)

proper subject for copyright protection.  <u>See</u> <u>Peter Lettrese</u> <u>& Assocs., Inc.,</u> 533 F.3d at 1302 (recognizing that copyright protection "does not extend to any underlying ideas, procedures, processes, and systems").  Indeed, if Mannington sought copyright protection for the idea of creating a rustic flooring product, that claim clearly would fail.  <u>See</u> <u>Satava v. Lowry</u>, 323 F.3d 805, 810 (9th Cir. 2003) (concluding that "no copyright protection may be afforded to the idea of producing a glass-in-glass jellyfish sculpture or to elements of expression that naturally follow from the idea of such a sculpture").  This argument thus counsels in favor of concluding that Home Legend has rebutted the presumption of validity attached to Mannington's copyright registration.

AO 72A

(Rev.8/8

## B.   Originality

Alternatively, Home Legend argues that Mannington's copyrighted material fails the originality requirement. "The central requirement of copyright protection for a work is that the work must have an element of originality." Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 824 (11th Cir. 1982). "The test of originality variously has been characterized as modest, minimal, and a low threshold." Id. (internal quotation marks omitted). Nonetheless, "[t]here remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." Feist Publ'ns, Inc., 499 U.S. at 359. "Such works are incapable of sustaining a valid copyright." Id.

29

"[W]orks are not copyrightable to the extent they do not involve any expression apart from the raw facts in the world." <u>Meshwerks, Inc.</u>, 528 F.3d at 1265; <u>see also</u> <u>Satava v. Lowry</u>, 323 F.3d 805, 810 (9th Cir. 2003) ("The originality requirement mandates that objective facts and ideas are not copyrightable." (internal quotation marks omitted)). Likewise, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." <u>Satava</u>, 323 F.3d at 810.  Further, a party cannot avoid the "copying" exception by copying a work in one medium from a work in another medium. <u>Meshworks</u>, 528 F.3d at 1267; <u>see also</u> <u>L. Batlin & Son, Inc. v. Snyder</u>, 536 F.2d 486, 491 (2d Cir. 1976) ("[T]o support a copyright there must be at least some substantial

30

AO 72A
(Rev.8/8
2)

variation, not merely a trivial variation such as might occur in the translation to a different medium.").

Here, Mannington, by its own admission, sought to copy the look of rustic wood.  The evidence in the record, even viewed in the light most favorable to Mannington as the non-movant, demonstrates that Mannington simply attempted to recreate the look of natural, rustic wood in another medium--artwork. Under those circumstances, the Court concludes that Mannington's 2-D artwork lacks the originality required for copyright protection. See Meshwerks, Inc., 528 F.3d at 1270 (10th Cir. 2008) (finding that digital, wire-frame models of Toyota's vehicles, which copied Toyota's designs and depicted the vehicles as vehicles, were not entitled to copyright protection); The Bridgeman

31

Art Library, Ltd. v. Corel Corp., 36 F. Supp. 2d 191, 195-97 (S.D.N.Y. Mar. 2, 1999) (finding that color transparencies of famous paintings in museums lacked sufficient originality to qualify for copyright protection).  Further, to the extent that Mannington sought to copy something occurring in nature, the scope of protection in its copyright would be narrow. See Satava, 323 F.3d at 812-13 (observing that scope of copyright protection for realistic depiction of live animal was narrow and noting that "[t]hese ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them").

Indeed, in a similar case, the United States District Court for the Northern District of California rejected a

32

challenge under the Administrative Procedures Act to the Copyright Office's refusal to grant a copyright for "rock and stone sculptures used to make decorative concrete stamps." <u>Proline Concrete Tools, Inc. v. Gord Dennis</u>, No. 07cv2310-LAB (AJB), slip op. at 1 (S.D. Cal. Mar. 28, 2013) (Docket Entry No. 110-11). The plaintiff in that action contended that it sought to register concrete sculptures that were "created from the artist's interpretation of stones and rocks he has observed." <u>Id.</u> at 9 (internal quotation marks omitted). The court noted that, when investigating the plaintiff's application, the Copyright Office "found credible evidence that [the sculptures] are molds of existing stones or rocks." <u>Id.</u> The court observed that "it isn't even contestable that the sculptures are not copyrightable." <u>Id.</u>

33

AO 72A

(Rev.8/8
2)

As a result, the court concluded that it found "no basis for concluding that [the Copyright Office's] refusal to register [the plaintiff's] copyright claims was arbitrary, capricious, or an abuse of discretion–or otherwise defective." Id.

Like the plaintiff in Proline, Mannington claimed copyright protection for a design depicting or copying elements found in nature--the look of a rustic, aged wooden floor. Copyright protection, however, is not available for such a design.[7] Consequently, the Court finds that Home

_____

[7]This is true regardless of the amount of effort that Mannington put into developing the design. See The Bridgeman Art Library, Ltd., 36 F. Supp. 2d at 197 (finding copyright was not available for "slavish copies of public domain works of art," although "it may be assumed that this required both skill and effort" (internal quotation marks omitted)).  Likewise, Mannington's contention that the boards underlying the Glazed Maple design bear little actual resemblance to the original wood grain makes no difference--the key here is that Mannington attempted to reproduce something that occurs naturally and sought copyright protection for the result. See id. (observing that "there was no spark of originality" where

Legend has presented sufficient evidence to rebut the presumption of validity as to the Copyright.

## C. Useful Article

Alternatively, Home Legend complains that Mannington has sought a copyright in a useful article. The Copyright Act allows copyright protection for "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either

---

"the point of the exercise was to reproduce the underlying works with absolute fidelity").

Likewise, Mannington's citations to cases involving artistic works based on the appearance of natural objects are not persuasive. (Resp. Mot. Summ. J (Docket Entry No. 118) at 14-16 (collecting cases).) Unlike the copyright holders in those cases, who added their own distinctive elements and interpretations to the natural objects depicted in their artistic works, Mannington sought to copy something that occurred in nature, rather than to add its own artistic touch to the design.

35

AO 72A

(Rev.8/8
2)

directly or with the aid of a machine or device." 17 U.S.C.

§ 102(a).   "Works of authorship include . . . pictorial,

graphic, and sculptural works."   17 U.S.C. § 102(a)(5).

"[P]ictorial, graphic, and sculptural works" include "two-

dimensional and three-dimensional works of fine, graphic,

and applied art, photographs, prints and art reproductions,

maps, globes, charts, diagrams, models, and technical

drawings, including architectural plans." 17 U.S.C. § 101.

"[T]he design of a useful article . . . shall be considered a

pictorial, graphic, or sculptural work only if, and only to the

extent that, such design incorporates pictorial, graphic, or

sculptural features that can be identified separately from,

and are capable of existing independently of, the utilitarian

aspects of the article." Id.

AO 72A
(Rev.8/8

"A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a 'useful article.'" 17 U.S.C. § 101. "The design of a useful article is a pictorial, graphic, or sculptural work 'only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.'" Bel Air Lighting, Inc. v. Progressive Lighting, Inc., Civil Action File Nos. 1:07-CV-2822-TWT, 1:07-CV-2199-TWT, 2010 WL 966422, at *3 (N.D. Ga. Mar. 15, 2010) (quoting 17 U.S.C. § 101), aff'd sub nom Progressive Lighting, Inc. v. Lowe's Home

37

Ctrs., Inc., 549 F. App'x 913 (11th Cir. 2013).  "Physical separability exists when, after removal of those features which are necessary for the utilitarian function of the article, the artistic features . . . nevertheless remain intact." Progressive Lighting, Inc., 549 F. App'x at 919-20 (alteration in original) (internal quotation marks and citation omitted). Conceptual similarity, on the other hand, "means that a pictorial, graphic or sculptural feature can stand on its own as a work of art traditionally conceived, and . . . the useful article in which it is embodied would be equally useful without it." Design Furnishings, Inc. v. Zen Path, LLC, No. CIV. 2:10-2765 WBS GGH, 2010 WL 5418893, at *4 (E.D. Cal. Dec. 23, 2010) (alteration in original) (internal quotation marks and citation omitted).

The United States Court of Appeals for the Eleventh Circuit concluded that a wire-spoked wheel cover was a useful article and was not eligible for copyright protection. Norris Indus., Inc. v. Int'l Tel. & Tel. Corp., 696 F.2d 918, 922-23 (11th Cir. 1983).  The court noted that, although "any features that can be identified separately and exist independently of the utilitarian aspects of the article may still be copyrighted as a work of art," the wire-spoke arrangement in that case was "incapable of existing separately."  Id.  The court observed that "functional components of useful articles, no matter how artistically designed, have generally been denied copyright protection unless they are physically separable from the useful articles."  Id. at 924.  The court found that "[t]he wire wheel

39

covers in this case are not superfluous ornamental designs, but functional components of utilitarian articles." Id.

Similarly, another judge in this District concluded that designs for light fixtures were not copyrightable. Bel Air Lighting, Inc., 2010 WL 966422, at *6. In that case, the plaintiff acknowledged that the light fixtures were useful articles. Id. at *3. The plaintiff, however, argued "that its designs incorporate sculptural features that are separable from the utilitarian aspects of the fixture." Id. The court rejected that argument, noting that "[c]onceptual separability . . . does not extend to functional components of utilitarian articles, no matter how artistically designed." Id. at *4 (internal quotation marks omitted). The court concluded that the features at issue in the light fixtures were functional

40

components and noted that because those features were not separable from the utilitarian aspects of the light fixtures, they were not copyrightable. Id. at *5-6. The court observed that the fact that the copyright office had granted copyrights for the light fixture designs did not require a different conclusion because a copyright registration provided only a rebuttable presumption of validity. Id. at *6.

If Mannington had sought to copyright its laminate flooring itself, the laminate flooring, taken as a whole, certainly would be a useful article and would not be eligible for copyright protection. Mannington, however, obtained a copyright for 2-D artwork to be used in creating laminate flooring. Here, the 2-D artwork element of the laminate flooring simply is not separable from the functional element

41

of the flooring.  Certainly, the laminate flooring would not be marketable if its functional elements were separated from the artistic elements, and, conversely, the 2-D artwork would be not marketable if it were separated from the functional elements of the flooring.  See Universal Furniture, Int'l v. Collezone Europa USA, Inc., 196 F. App'x 166, 171 (4th Cir. 2006) (finding that district court did not abuse its discretion by finding that design compilations were "not conceptually separable from the functional elements of the furniture" and noting that "the furniture would almost certainly not be marketable to any significant segment of the community if it had no utilitarian use and only aesthetic qualities.").[8]   Under those circumstances, the artwork

_____

[8]Mr. Natkin testified that the 2-D artwork itself performed no functional purpose and that the laminate flooring would have

AO 72A
(Rev.8/8
2)

portion of the laminate flooring is a functional component of the flooring itself, and the artwork is not conceptually separable from the flooring as a whole.   Progressive Lighting, Inc., 549 F. App'x at 920-21.[9]   Under those circumstances, copyright protection is not available for the 2-D artwork at issue.

---

performed just as well without the 2-D artwork at issue.  This testimony, however, does not change the fact that the 2-D artwork is an integral part of the overall shape, contour, or configuration of the laminate flooring.  Consequently, the Court finds that the 2-D artwork is not separable from the useful article itself--the laminate flooring.

[9]As a result, the various cases cited by Mannington involving copyrights in artwork depicted on clothing, furniture, furnishings, and rugs are distinguishable.  (Resp. Mot. Summ. J. at 12-14 (collecting cases).)  In all of those cases, the artwork at issues was separable from the useful articles themselves.  That is not the case here.

AO 72A

(Rev.8/8
2)

## D.   Summary

In sum, the Court finds that Home Legend has met its burden to rebut the presumption of validity created by Mannington's copyright registration.   See Progressive Lighting, Inc., 549 F. App'x at 919 (concluding defendant met its burden to rebut presumption of validity "by offering evidence showing, inter alia, that the works whose copyrightability is at issue were useful articles that did not contain separable copyrightable elements").   Indeed, for the reasons discussed supra Parts III.A-C, the Court concludes that the subject matter of the Copyright--the 2-D artwork-- was not entitled to copyright protection. As a result, Mannington's Counterclaim against Home Legend, which asserts a claim of copyright infringement, fails. The Court

44

consequently grants Home Legend's Motion for Summary Judgment, and dismisses that Counterclaim.

## IV. Conclusion

ACCORDINGLY, the Court **GRANTS** Home Legend's Motion for Summary Judgment [110]. The Court **DISMISSES** Mannington's Counterclaim against Home Legend, which asserted a claim of copyright infringement. It appears that this Order may resolve many, if not all, of the issues presented by Home Legend's Complaint in this action, which sought the following declarations: (1) that Home Legend was not infringing the Copyright (Compl. (Docket Entry No. 1) ¶ 6); and (2) that the Copyright was invalid and unenforceable for a variety of reasons (id. ¶ 7). Home Legend, however, did not seek summary judgment

on its own Complaint.  (<u>See generally</u> Mot. Summ. J.)  The

Court consequently **DIRECTS** Home Legend to file a notice

with the Court **WITHIN FOURTEEN (14) DAYS** advising the

Court as to how Home Legend intends to proceed with its

Complaint.

IT IS SO ORDERED, this the 3 day of July, 2014.

_____

UNITED  STATES  DISTRICT  JUDGE

46